IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| KIRBY HALL, § | |
| § | |
| Petitioner, § | |
| § | |
| V. § | CIVIL ACTION NO. H-16-2005 |
| § | |
| LORIE DAVIS, DIRECTOR, TEXAS § | |
| DEPARTMENT OF CRIMINAL § | |
| JUSTICE, CORRECTIONAL § | |
| INSTITUTIONS DIVISION, § | |
| § | |
| Respondent. § | |

### MEMORANDUM AND RECOMMENDATION GRANTING RESPONDENT'S MOTION FOR SUMMARY JUDGMENT

Before the Magistrate Judge in this proceeding brought pursuant to 28 U.S.C. § 2254 is Respondent's Motion for Summary Judgment (Document No. 12) against Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1). Having considered the motion, the absence of a response, the claims raised by Petitioner in his § 2254 Application and Memorandum in support, the state court records, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Respondent's Motion for Summary Judgment (Document No. 12) be GRANTED, and that Petitioner's Federal Application for Writ of Habeas Corpus (Document No. 1) be DENIED and DISMISSED WITH PREJUDICE.

### I.   Introduction and Procedural History

Kirby Hall ("Hall") is currently incarcerated in Texas Department of Criminal Justice, Correctional Institutions Division (TDCJ-CID), as a result of a 2013 felony conviction for aggravated assault of a public servant in the 228th District Court of Harris County, Texas, cause no.

139465301010, for which he was sentenced to fifty (50) years imprisonment. Hall was charged by indictment with that offense on July 15, 2013, with the Indictment alleging:

> KIRBY HALL AKA KENDALL DAVIS, hereinafter styled Defendant, on or about SEPTEMBER 2, 2011, did then and there unlawfully, intentionally and knowingly threaten with imminent bodily injury, A. Whitlock, hereafter called the Complainant, while Complainant was lawfully discharging an official duty, by using and exhibiting a deadly weapon, namely a firearm, knowing that the Complainant was a public servant.

Hall pled not guilty and proceeded to trial. On August 15, 2013, a jury found Hall guilty, and he was thereafter sentenced by the court following a punishment hearing to fifty (50) years incarceration.

Hall appealed his conviction. On November 13, 2014, Texas' Fourteenth Court of Appeals affirmed the conviction in an unpublished opinion. *Hall v. State*, No. 14-13-00742-CR. Hall's petition for discretionary review was then refused by the Texas Court of Criminal Appeals on February 25, 2015. Hall did not file a petition for writ of certiorari.

On February 17, 2016, Hall filed a state application for writ of habeas corpus. That application was denied by the Texas Court of Criminal Appeals on June 15, 2016, on the findings of the state trial court without a hearing. This § 2254 proceeding was filed by Hall on or about June 28, 2016.

Respondent has filed a Motion for Summary Judgment (Document No. 12), to which no response in opposition has been filed.[1] This § 2254 proceeding is ripe for ruling.

---

[1] In an Order entered on July 14, 2016 (Document No. 6), Respondent was instructed to file a responsive pleading. In that same Order, Petitioner was instructed to file a response to any dispositive motion filed by Respondent within thirty days. Petitioner was admonished in that Order that failure to file a response to a dispositive motion could result in this action being dismissed for failure to prosecute. Respondent filed a Motion for Summary Judgment on November 3, 2016 (Document No. 12). Petitioner has not, to this date, filed a response to the motion. Petitioner's failure to file a response to the Motion for Summary Judgment, as required by the Order entered on July 14, 2016, independently justifies the dismissal of this action under FED. R. CIV. P. 41(b). *See Martinez v. Johnson*, 104 F.3d 769, 772-773 (5th Cir.), *cert. denied*, 522 U.S. 875 (1997).

## II. Factual and Evidentiary Background

The factual and evidentiary background, as set forth by Texas' Fourteenth Court of Appeals in affirming Hall's conviction, is as follows:

> On September 1, 2011, Harris County Sheriff's Deputy Alan Whitlock was dispatched to a disturbance in an apartment complex. As he drove to the location of the disturbance Whitlock heard shots fired. Soon after hearing the shots fired, Whitlock observed a white Cadillac and a black car driving very close together. Whitlock testified this was suspicious in that it was approximately 2:00 a.m. and there were no other cars in the area. When Whitlock pulled behind the white Cadillac he noticed the passengers of the car making furtive, suspicious movements. Whitlock turned on his emergency lights to stop the Cadillac. When the driver of the car did not stop, Whitlock turned on his siren and followed the car. As the car went around a curve Whitlock saw the passenger in the back left side behind the driver lean out of the door with a gun. Whitlock could not identify the individual with the gun other than his race, which was African-American. Whitlock then heard gunfire and felt a bullet in his chest.
>
> Juan Ybarra, the owner of the white Cadillac, testified that on the day of the offense, he went to Richard Rodriguez's house to drink and to smoke marijuana with six or seven of their mutual friends including Jose Gonzalez, Brianna Garza, and [Hall]. At some point in the evening, Ybarra planned to drive Gonzalez and Garza home. [Hall] left the house for a few minutes, returned with a rifle, and said to Ybarra, "Let's go shoot this." At that point, Ybarra, Rodriguez, and [Hall] decided to shoot the gun, then drive Gonzalez and Garza home. Rodriguez knew of a location where neighbors shot guns without anyone calling the police.
>
> When they arrived at the location described by Rodriguez, Ybarra stopped the car, [Hall] got out, shot the gun in the air four or five times, and got back in the front passenger seat of the car. Ybarra then drove to Gonzalez's house. After Gonzalez got out of the car, the rest of the passengers changed positions. Rodriguez moved to the front passenger seat, Garza sat behind Rodriguez in the right back passenger seat, and [Hall] sat behind Ybarra in the left back passenger seat. As Ybarra drove out of Gonzalez's neighborhood, Rodriguez leaned out of the front passenger seat and fired the gun once. Ybarra became nervous about Rodriguez and [Hall] shooting the gun, and decided to drive then back to Rodriguez's before taking Garza home. Ybarra testified, "I wanted to get that gun out of my car as quick as I could."
>
> As Ybarra was driving toward Rodriguez's house he saw two patrol cars pass. One of the cars shined its spotlight on the car and activated its emergency lights. Although [Hall] told him not to stop, Ybarra stopped the car. At this time, Ybarra testified that everyone was afraid because the gun was sitting in the front seat of the

3

car. Ybarra told Rodriguez to throw the gun out of the window. [Hall] told Rodriguez to shoot the police officer. Rodriguez gave the gun to [Hall] explaining that he did not want to shoot the police officer. At this point, Ybarra sped up because he was afraid if he stopped for the police car that [Hall] would shoot him. As Ybarra was driving he heard three to four gun shots in quick succession. Shortly after the shooting, when Ybarra slowed the car to make a turn, Rodriguez and Garza jumped out of the moving car. Later, [Hall] jumped out of the car. Ybarra eventually pleaded guilty to evading arrest with a motor vehicle.

Brianna Garza testified and gave an account similar to that of Ybarra. Garza testified that it was her understanding that she would be driven home before the men began shooting the gun. She recounted the initial shooting in the field, Rodriguez shooting the gun while the car was moving, the police attempting to stop them, [Hall] telling Rodriguez to shoot the officer, and Rodriguez refusing to do so. When [Hall] took the gun and said he was going to shoot the officer, Garza hit the back of the gun in attempt to stop [Hall] from shooting. Garza thought [Hall] attempted to point the gun at Ybarra because Ybarra was stopped for the police car and did not want to flee. Garza testified that as [Hall] began shooting, she and Rodriguez jumped out of the car. Garza and Rodriguez ran to Rodriguez's house. [Hall] returned to Rodriguez's house approximately ten minutes later, but left again when the police arrived. Garza pleaded guilty to evading arrest.

[Hall] was convicted of aggravated assault against a public servant and sentenced to 50 years in prison.

*Hall v. State*, No. 14-13-00742-CR at 1-4.

### III. Claims

Hall raises four claims related to the testimony at trial from those he considers to have been "accomplices," alleging that because their testimony was not corroborated::

(1) evidence was excluded and it resulted in his conviction despite his actual innocence;

(2) there was "insufficient evidence to prove beyond a reasonable doubt that [he] 'used' a deadly weapon during the commission of the offense;"

(3) the absence of a jury instruction on the consideration of accomplice witness testimony and/or party liability denied him due process and the right to a fair trial; and

4

(4) his trial counsel was ineffective for failing to request an instruction on the consideration of accomplice witness testimony.

In the Motion for Summary Judgment, Respondent argues that Hall has not stated a claim for actual innocence (claim 1), has not stated a viable due process or ineffective assistance of counsel claim premised on the "accomplice" witness testimony at trial (claims 3 and 4), and that no relief is available on any of Hall's claims, including his sufficiency of the evidence claim (claim 2), in any event under § 2254(d). As of this date, Hall has not filed a response to Respondent's Motion for Summary Judgment.

## IV. Standard of Review under § 2254(d)

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), when a claim presented in a federal habeas corpus proceeding has already been adjudicated on the merits in a state proceeding, federal review is limited. 28 U.S.C. § 2254(d) provides:

> (d) An application for writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

"For purposes of 28 U.S.C. § 2254(d)(1), clearly established law as determined by [the Supreme] Court 'refers to the holdings, as opposed to the dicta, of th[e] Court's decisions as of the time of the relevant state-court decision.'" *Yarborough v. Alvarado*, 541 U.S. 652, 660-61 (2004) (quoting

*Williams v. Taylor*, 529 U.S. 362, 412 (2000)).

"[A] decision by a state court is 'contrary to' [the United States Supreme Court's] clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent.'" *Price v. Vincent*, 538 U.S. 634, 640 (2003) (quoting *Williams*, 529 U.S. at 405-406). A state court decision involves an "unreasonable application of" clearly established federal law "if the state court identifies the correct governing legal principle from the Supreme Court's decision but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. "State-court decisions are measured against [the Supreme Court's] precedents as of 'the time the state court renders its decision.'" *Cullen v. Pinholster*, 563 U.S. 170, 131 S.Ct. 1388, 1399 (2011) (quoting *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003)). Similarly, state court decisions are reviewed under § 2254(d) by reference to the facts that were before the state court at the time. *Id.* ("It would be strange to ask federal courts to analyze whether a state court adjudication resulted in a decision that unreasonably applied federal law to facts not before the state court.").

For factual issues, "the AEDPA precludes federal habeas relief unless the state court's decision on the merits was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" 28 U.S.C. § 2254(d)(2) (2000). "[A] state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 130 S.Ct. 841, 849 (2010). Instead, factual determinations made by state courts carry a presumption of correctness and federal courts on habeas review are bound by them unless there is clear and convincing evidence

to the contrary. 28 U.S.C. § 2254(e)(1) (2000). *Smith v. Cockrell*, 311 F.3d 661, 667 (5th Cir. 2002), *cert. dism'd,* 541 U.S. 913 (2004).

Under § 2254(d), once a federal constitutional claim has been adjudicated by a state court, a federal court cannot conduct an independent review of that claim in a federal habeas corpus proceeding. *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 786-787 (2011). Rather, it is for the federal court only to determine whether the state court's decision was contrary to or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States, and whether the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Woodford*, 537 U.S. at 27 ("The federal habeas scheme leaves primary responsibility with the state courts for these judgments and authorizes federal-court intervention only when a state-court decision is objectively unreasonable."). This is true regardless of whether the state court rejected the claims summarily, or with a reasoned analysis. *Cullen*, 131 S.Ct. at 1402 ("Section 2254(d) applies even where there has been a summary denial."). Where a claim has been adjudicated on the merits by the state courts, relief is available under § 2254(d) *only* in those situations "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" Supreme Court precedent. *Richter*, 131 S.Ct. at 786.

Whether a federal habeas court would have, or could have, reached a conclusion contrary to that reached by the state court on an issue is not determinative under § 2254(d). *Id.* ("even a strong case for relief does not mean that the state court's contrary conclusion was unreasonable."). In addition, the correctness of the state court's decision is not determinative. As instructed by the Supreme Court in *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), "[i]n order for a federal court to find

a state court's application of our precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. . . . The state court's application must have been 'objectively unreasonable.'" (citations omitted); *see also Price*, 538 U.S. at 641 ( "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state court decision applied [a Supreme Court case] incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied [that case] to the facts of his case in an objectively unreasonable manner.'") (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)). Moreover, it is the state court's ultimate decision that is to be reviewed for reasonableness, not its reasoning. *Neal v. Puckett*, 286 F.3d 230, 244-46 (5th Cir. 2002), *cert. denied*, 537 U.S. 1104 (2003); *Pondexter v. Dretke*, 346 F.3d 142, 148-9 (5th Cir. 2003), *cert. denied*, 541 U.S. 1045 (2004). A habeas petitioner can only overcome § 2254(d)'s bar "by showing that 'there was no reasonable basis'" for the state court's rejection of his claim(s). *Cullen*, 131 S.Ct. at 1402 (quoting *Richter*, 131 S.Ct. at 784)).

**V.    Discussion**

Hall's claims all relate to whether Juan Ybarra and Brianna Garza should have, or could have, been treated as accomplices. According to Hall, both were accomplices and/or parties to the offense and their testimony, to be admissible, should have been, but was not, corroborated by other evidence. Segueing from that argument, Hall maintains that evidence of their status as accomplices or parties was excluded and he is actually innocent, that there is insufficient evidence to support his conviction and the deadly weapon finding, and that he was denied due process and a fair trial due to the absence of a jury instruction on the consideration of accomplice witness testimony.

In addressing Hall's sufficiency of the evidence claim on appeal, Texas' Fourteenth Court

of Appeals made both a legal and factual determination that Ybarra and Garza were neither accomplices nor parties to the aggravated assault offense of which Hall was convicted. In so doing, the Texas Court of Appeals relied on federal law to address Hall's sufficiency of the evidence claim(s), and state law to determine whether Ybarra and Garza were, or could have been considered, accomplices or parties to the aggravated assault offense. In finding that there was sufficient evidence and that Ybarra and Garza were not accomplices or parties, the Court of Appeals wrote in a comprehensive opinion:

> In a single issue [Hall] claims the evidence is insufficient to support his conviction. Specifically, [Hall] contends that the evidence does not sufficiently corroborate the testimony of the accomplice witnesses.
>
> In evaluating the sufficiency of the evidence, we must view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).
>
> The accomplice-witness rule provides that a "conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense." Tex. Code Crim. Proc. art. 3814. The rule derives from the legislative determination that accomplice testimony must be taken with a degree of caution. *Nolley v. State*, 5 S.W.3d 850, 852-53 (Tex. App.–Houston [14th Dist.] 1999, no pet.). The underlying rationale is that the accomplice is a corrupt source who may well have improper incentives when testifying against the accused – e.g., to redirect blame or to gain favor with the State in exchange for a reduced punishment. *Wincott v. Scott*, 59 S.W.3d 691, 698 (Tex. App.–Austin 2001, pet ref'd). For these reasons, an accomplice witness is a "discredited witness," and regardless of how completely the accomplice may outline the facts of a case, the jury may not convict the accused without additional corroborating evidence. *Walker v. State*, 615 S.W.2d 728, 731 (Tex. Crim. App. 1981); *Gaston v. State*, 324 S.W.3d 905, 908-09 (Tex. App.–Houston [14th Dist.] 2010, pet, ref'd).
>
> Before turning to whether the evidence was sufficiently corroborated, we review whether Ybarra and Garza were accomplice witnesses. An accomplice is an individual who participates with a defendant before, during, or after the commission of the crime and acts with the requisite culpable mental state. *Cocke v. State*, 201

9

S.W.3d 744, 747 (Tex. Crim. App. 2006); *Yost v. State*, 222 S.W.3d 865, 871 (Tex. App.–Houston [14th Dist.] 2007, pet ref'd). Such participation must involve an affirmative act that promoted the commission of the offense with which the accused was charged. *Paredes v. State*, 129 S.W.3d 530, 536 (Tex. Crim. App. 2004).

To sustain a conviction for aggravated assault of a public servant the evidence must demonstrate that: (1) the person intentionally or knowingly threatened another with imminent bodily injury, (2) the person used or exhibited a deadly weapon during the commission of the assault, and (3) the offense was committed against a person the actor knew was a public servant while the public servant was lawfully discharging an official duty. Tex. Penal Code §§ 22.01(a)(2), 22.02(a)(2), (b)(2)(B). Pursuant to Texas Penal Code sections 7.01 and 7.02, an individual can be convicted as a party to an offense if that offense was committed by his own conduct, by the conduct of another for which he is criminally responsible, or both. Tex. Penal Code § 7.01. A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Tex. Penal Code § 7.02(a)(2). Therefore, we review the record to determine whether the evidence reflects that Ybarra and Garza could have been convicted as parties to the offense of aggravated assault of a public servant. [Hall] did not request an accomplice witness instruction at trial, nor does he argue that Ybarra and Garza were accomplices as a matter of law. Therefore, we address whether Ybarra and Garza were accomplices as a matter of fact. *See Druery v. State*, 225 S.W.3d 491, 497-98 (Tex. Crim. App. 2007) (jury instruction is given on an accomplice as a matter of law when witness is charged or could be charged with the offense or lesser-included offense; when the evidence is conflicting as to whether the witness was accomplice, jury decides whether witness is an accomplice as a matter of fact).

The record reflects that Ybarra and Garza were present when the offense occurred, and that they participated in the offense of evading arrest or detention. Ybarra was charged with evading arrest or detention in a motor vehicle, a state jail felony. *See* Tex. Penal Code § 38.04(b)(1)(B). Garza was charged with evading arrest on foot, a Class C misdemeanor. *See id.* § 38.04(a). However, the record does not reflect that Ybarra and Garza participated with [Hall] before, during, or after the commission of the offense of aggravated assault of a public servant, or acted with the requisite culpable mental state to commit that offense.

Both Ybarra and Garza testified that they knew a gun was in the car and that [Hall] and Rodriguez intended to shoot it in an open area. Garza expected to be dropped off at her home before any shooting began. Ybarra testified he attempted to stop the car when the police initiated the traffic stop, and that he only drove away because he feared [Hall] would shoot him. Ybarra further testified that he instructed Rodriguez to throw the gun out of the window. Similarly, Garza testified that she hit

10

the back of the gun in an attempt to prevent [Hall] from shooting Whitlock. While they knew of the gun and the plan to shoot it prior to commission of the offense, they believed [Hall] and Rodriguez intended to shoot the gun in an open area. Ybarra and Garza did not anticipate that [Hall] would shoot a police officer, nor did they act with the culpable mental state to commit the offense of aggravated assault of a public servant. The fact that Ybarra and Garza were in the car, coupled with their knowledge of the weapon when [Hall] shot Whitlock, does not render them accomplice witnesses to the charged offense. *See Zuniga v. State*, 393 S.W.3d 404, 414 (Tex. App.–San Antonio 2012, pet. ref'd) (witness was not an accomplice simply because he was a passenger in the car at scene of murder).

[Hall] further argues that Ybarra and Garza participated in a conspiracy to shoot the weapon, and could be considered accomplices under section 7.02 of the Texas Penal Code. If in the attempt to carry out a conspiracy to commit one felony another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of carrying out the conspiracy. Tex. Penal Code § 7.02(b); *Zamora v. State*, 432 S.W.3d 919, 922 (Tex. App.–Houston [14th Dist.] 2014, no pet.).

[Hall] argues that Ybarra and Garza knew that the gun was in the car and discussed a plan to shoot the gun in an open area. Therefore, [Hall] argues, the parties should have "foreseen that shooting a firearm into a neighborhood might attract the attention of law enforcement and that in entering into that conspiracy someone might get shot."

The record does not reflect that Ybarra and Garza were accomplice witnesses because they were criminally responsible for [Hall's] actions under the conspiracy theory of party liability. [Hall] argues that by planning to discharge a firearm in the city, the group should have anticipated the potential for the offense of aggravated assault of a public servant.

[Hall's] theory is not supported by the evidence or the Penal Code definition of co-conspirators. Section 7.02(b) of the Texas Penal Code provides that a person can be held criminally responsible under the law of parties if, in the attempt to carry out a conspiracy to commit one felony offense, another felony is committed by one of the conspirators. *See Hooper v. State*, 214 S.W.3d 9, 13-14 (Tex. Crim. App. 2007). Discharging a firearm in a municipality is a misdemeanor, not a felony. See Tex. Penal Code §§ 42.01(a)(7), (d) (discharge of a firearm in a public place is a Class B misdemeanor) & 42.12(a), (b) (discharge of a firearm inside the corporate limits of a municipality having a population of 100,000 or more is a Class A misdemeanor). The record does not contain evidence of a conspiracy to commit a

> felony.
>
> [Hall's] argument is predicated on the idea that Ybarra and Garza were accomplices to aggravated assault of a public servant. The record does not support [Hall's] assertion. The record reflects that Ybarra and Garza did not participate in the shooting of the police officer, did not conspire to shoot a police officer, nor could they have anticipated when they got in the car with [Hall] that he would shoot a police officer. If a State's witness has no complicity in the offense for which an accused is on trial, the witness's testimony is not that of an accomplice witness whatever may have been the witness's complicity with the accused in the commission of other offenses. *Gamez v. State*, 737 S.W.2d 315, 322 (Tex. Crim. App. 1987). There is no evidence that Ybarra and Garza were [Hall's] accomplices as a matter of fact; therefore, there is no requirement of corroboration. *See* Tex. Code Crim. Proc. art. 38.14.
>
> Based on all the evidence presented, including the testimony of Ybarra and Garza, viewed in the light most favorable to the verdict, we conclude a rational jury cold have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. We therefore overrule [Hall's] sole issue, and affirm the trial court's judgment.

*Hall v. State*, No. 14-13-00742-CR at 4-9. Similarly, in rejecting Hall's state application for writ of habeas corpus on the merits, the Texas Court of Criminal Appeals relied on the findings and conclusions of the Texas Court of Appeals that Ybarra and Garza were not accomplices or parties to the aggravated assault offense. Findings of Fact and Conclusions of Law (Document No. 14-16 at 14-19).

The determination by the Texas Court of Appeals, which was later relied upon by the Texas Court of Criminal Appeals, that neither Ybarra nor Gazra were accomplices or parties to the aggravated assault offense defeats most, if not all, of Hall's claims. That is because that determination was not based on an unreasonable determination of the facts in light of the evidence presented, and was not contrary to, or based on, an unreasonable application of clearly established Federal law. In that regard, there is no clearly established Federal law that requires accomplice testimony to be corroborated. *See Thompson v. Lynaugh*, 821 F.2d 1054, 1062 (5th Cir. 1987) ("The

state-law requirement that accomplice witness testimony be corroborated has no independent constitutional footing."). That is a state law requirement, *see* TEX. CRIM. PROC. CODE ANN. art. 38.14 (West) ("A conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed; and the corroboration is not sufficient if it merely shows the commission of the offense."), that does not raise federal constitutional concerns. *Ivy v. Davis,* No. 4:16-CV-456, 2017 WL 661519, at *7 (S.D. Tex. Feb. 17, 2017) (Hoyt, J.) ("The requirement that accomplice testimony be corroborated is purely a creation of state law."); *Batts v. Stephens*, No. CIV.A. H-13-3655, 2015 WL 1470409, at *18 (S.D. Tex. Mar. 31, 2015) (Rosenthal, J.) ("Batts's claim that the trial court failed to comply with a Texas state-law requirement that an accomplice's testimony be corroborated does not present a federal constitutional claim. There is no such requirement under federal law."); *see also United States v. Valdez,* 453 F.3d 252, 257 (5th Cir.2006) (a defendant may be found guilty based on the "uncorroborated testimony" of accomplice or co-conspirator, unless the testimony is "incredible") (citing *United States v. Villegas–Rodriguez,* 171 F.3d 224, 228 (5th Cir.1999) and *United States v. Bermea,* 30 F.3d 1539, 1552 (5th Cir.1994)). In addition, to the extent neither Ybarra nor Garza were, as a matter of state law, either accomplices or parties to the offense, Hall's claims related to their "uncorroborated" accomplice witness testimony all fail for the reasons advanced in Respondent's Motion for Summary Judgment.

    A.    **Actual Innocence/Excluded Evidence Claim**

In his first claim, Hall maintains the State excluded evidence from which it could have been determined that Ybarra and Garza were accomplices to the aggravated assault offense, and that the

exclusion of such evidence resulted in his conviction despite his actual innocence. Hall alleges in support of this claim as follows:

> During trial, [the] prosecution circumvented the fact that testifying witnesses were accomplices as a matter of law. By eliminating this piece of evidence [sic] resulted in petitioner's constitutional rights being violated and was a fundamental miscarriage of justice of one who is actually innocent. Had this evidence "not" been excluded, no rational trier of fact could have found petitioner guilty according to Tex. Penal Code art. 38.14.
>
> * * *
>
> . . . . While it is true that mere presence at the crime scene or failure to disclose knowledge about a crime does not make someone an accomplice, there was conflicting evidence as to whether Ybarra and Garza were accomplices, See (RR V3 170 at 17-18) (RR. V3 170 at 23-25) (RR V3 171 at 24-25) (RR V3 172 at 1-4) (RR V3 172 at 20-25) (RR V3 173 at 1-23) (RR V3 177 at 2-24) (RR V3 178 at 1-18) thus, the jury should have been given the accomplice witness instruction. Cocke v. State, 201 S.W.3d 744, 748 (Tex. Crim. App. 2006); Blake v. State, 971 S.W.2d 451, 455 (Tex. Crim. App. 1998).
>
> In addition to whether Ybarra and Garza were accomplices as a matter of law, the fact that Ybarra initially gave false statements, see (RR V4 15 at 3-7), both Ybarra and Garza pled guilty for their participation in greater offenses, see (RR V4 at 23 and 24) (RR V4 123 and 124), and Ybarra's right hand tested positive for gun shot residue, see State Exhibit 121, and was initially identified as the shooter, see (RR V3 at 61 and 71), and Garza was given an incentive for her testimony. see (RR V4 131 at 5-8) are all circumstantial evidence tending to show they were parties to the offense at trial.

Memorandum in Support (Document No. 2) at 9-10, 11.

To the extent Hall alleges that evidence was excluded, he has not identified any such evidence. Moreover, Hall's characterizations of the evidence which he claims shows that Ybarra and Garza were parties to the offense are both inaccurate and misleading. The evidence as to whether Ybarra and Garza were accomplices was not conflicting. Instead, the evidence in the record is accurately reflected in the Texas Court of Appeals' opinion. In addition, while it is true that both Ybarra and Garza pled guilty to the offense of evading arrest, that fact was disclosed to the jury and,

14

as amply discussed by the Texas Court of Appeals, the offense of evading arrest is not a lesser included offense of the aggravated assault offense of which Hall was convicted. As for Hall's allegations that Ybarra had gunshot residue on his hand, and was initially identified as the shooter, neither circumstance renders *unreasonable* Texas Court of Appeals' factual determination that Ybarra and Garza were not accomplices or parties to the aggravated assault offense. Although there is a gunshot residue report showing that Ybarra did have residue on his right hand (Document No. 13-20 at 19; Document No. 14-1 at 2-3), that report does not evidence that Ybarra was the shooter or otherwise was an accomplice or party to the shooting, as testified to by William Davis, the director of physical evidence at the Harris County Institute of Forensic Science. *See* Davis testimony (Document No. 13-10 at 175-188). As for Officer Whitlock's identification of the shooter, he testified at trial that when he was initially shot he radioed that he had been shot by the "driver" of the Cadillac. He later realized and clarified that it could not have been the driver and that the shot came from the rear driver's side of the vehicle. Whitlock testimony (Document No. 13-8 at 38-40, 71, 80-81). As to whether Garza had an incentive to testify against Hall and minimize her involvement, she testified at trial that she was not promised anything for her testimony, but did hope that the prosecutor would put in a "good word" for her on charges she had pending. Garza testimony (Document No. 13-10 at 130-131). In all, nothing in the record shows or suggests that any evidence was "excluded" or that the Texas Court of Appeals' factual and/or legal determination(s) that Ybarra and Garza were not accomplices or parties to the aggravated assault offense are unreasonable. Accordingly, under § 2254(d), no relief is available to Hall on his actual innocence/excluded evidence claim.

**B.     Sufficiency of the Evidence Claim**

In his second claim, Hall maintains, in the same manner he did in his direct appeal and in his state application for writ of habeas corpus, that there is insufficient evidence to support his conviction and insufficient evidence to support the deadly weapon finding. According to Hall, the only evidence that he was the shooter and "used" a deadly weapon came from those who should have been considered accomplices or parties to the offense.

The Texas Court of Appeals rejected Hall's sufficiency of the evidence claims, finding that neither Ybarra nor Garza were accomplices or parties to the aggravated assault offense. That decision was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States, and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. A legal sufficiency claim presents a mixed question of law and fact and is governed by the standard set forth in *Jackson v. Virginia*, 443 U.S. 307, 325 (1979). Under that standard, a petitioner must prove that no rational trier of fact could have found the existence of facts necessary to establish the offense beyond a reasonable doubt. *Id.* at 325-26. In applying the standard, all evidence is viewed in the light most favorable to the prosecution, *id.* at 319; *Bujol v. Cain*, 713 F.2d 112, 115 (5th Cir. 1983), *cert. denied*, 464 U.S. 1049 (1984), and all credibility choices and conflicts in the evidence are resolved in favor of the verdict. *United States v. Graves*, 669 F.2d 964, 969 (5th Cir. 1982).

Here, the Texas Court of Appeals cited to and relied upon the clearly established Federal law set forth *Jackson v. Virginia* in determining that there was sufficient evidence to support Hall's conviction and the deadly weapon finding. In addition, as set forth above, the factual determinations made by the Texas Court of Appeals on whether Ybarra and Garza were accomplices or parties to the aggravated assault offense were not unreasonable given the evidence in the record. Accordingly,

under § 2254(d), no relief is available to Hall on his sufficiency of the evidence claim(s).

### C. Jury Instruction Claim

In his next claim, Hall complains about the absence of a jury instruction on the consideration of accomplice witness testimony. Because, as set forth above, neither Ybarra nor Garza were accomplices or parties to the aggravated assault offense, Hall was not entitled to a jury instruction on accomplice witness testimony. The Texas Court of Criminal Appeals' rejection of this claim on that basis, *see* Conclusions of Law, ¶ 7 (Document No. 14-16 at 17) ("Because neither Ybarra, nor Garza were accomplices as a matter of law, accomplices as a matter of fact, or co-conspirators, [Hall] was not entitled to a jury instruction on accomplice witness testimony or conspiracy, even if such instructions had been requested by trial counsel. *See Druery v. State*, 225 S.W.3d 491, 497-98 (Tex. Crim. App. 2007)"), is not contrary to and does not involve an unreasonable application of clearly established Federal law, and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding(s). As such, no relief is available on this claim under § 2254(d).

### D. Ineffective Assistance of Counsel Claim

In his final claim, Hall contends that his trial counsel was ineffective for failing to request a jury instruction on the consideration of accomplice witness testimony. The Texas Court of Criminal Appeals rejected this ineffectiveness claim by reference to the clearly established Federal law in *Strickland v. Washington*, 466 U.S. 668 (1984), and the Court of Appeals' determination that Ybarra and Garza were not accomplices or parties to the aggravated assault offense. *See* Conclusions of Law ¶ 10 (Document No. 14-16 at 18) ("[Hall] fails to meet his requisite burden of showing that any alleged deficiency in trial counsel's failure to request an accomplice witness

17

testimony jury instruction affected the outcome of his case or rendered the representation ineffective, especially in light of the appellate court's determination that Ybarra and Garza were neither accomplices as a matter of fact, or co-conspirators. *See Strickland*, 466 U.S. at 686."). That rejection is not contrary to and does not involve an unreasonable application of *Strickland*,[2] and is not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Under § 2254(d), no relief is available on this ineffectiveness claim.

VII. **Conclusion and Recommendation**

Based on the foregoing and the conclusion that no relief is available to Hall on the merits of any of his claims under § 2254(d), the Magistrate Judge

RECOMMENDS that Respondent's Motion for Summary Judgment (Document No. 12) be GRANTED, and that Petitioner Kirby Hall's Federal Application for Writ of Habeas Corpus (Document No. 1) be DENIED and DISMISSED WITH PREJUDICE.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from

---

[2] In *Strickland*, the Supreme Court determined that relief is available if a petitioner can show that his counsel was deficient and that the deficiency prejudiced him to the extent that a fair trial could not be had. *Id*. at 687. Deficiency under *Strickland* is judged by an objective reasonableness standard, with great deference given to counsel and a presumption that the disputed conduct is reasonable. *Id*. at 687-689. The prejudice element requires a petitioner to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. A petitioner has the burden to prove both the deficiency and the prejudice prongs in order to be entitled to relief. *United States v. Chavez*, 193 F.3d 375, 378 (5th Cir. 1999).

attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140, 144-145 (1985); *Ware v. King*, 694 F.2d 89, 91 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association,* 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 10th day of May, 2017.

Frances H. Stacy
United States Magistrate Judge